Please all rise. Period, period, period. This Honorable Appellate Court for the Second Judicial Dismissal is now back in session. Soon to adjourn. The Honorable Susan Patterson will present. Please be seated. Your Honor, this case will be filed. 3-14-4241. People of the State of Illinois Lincoln Avenue v. Alvin Johnson v. Cumberland v. Cumberland v. Cumberland v. Cumberland v. Cumberland v. Cumberland Good morning and I'm sorry for being late. We were discussing last case and now we are ready to proceed with clear minds for this one. Alright, Ms. Vick. Good morning, Your Honors. Counsel? May it please the Court. My name is Ann Tick. I'm from the Office of the State Appellate Defender. And I represent the defendant Appellant Calvin Johnson. This case presents two issues. First, whether the State met its burden of proving the allegations against Mr. Johnson beyond a reasonable doubt. And second, whether it was prejudicial error for the judge to order a sex offender evaluation for a non-probationable offense. I will briefly review the facts to give context to these issues. The parties have been married for 19 years. We kind of know the facts. Why wasn't the victim's testimony corroborated sufficiently in this case to fairly that's what the trial court relied on in making its ruling. Certainly. There were so many inconsistencies and impeachments with other testimony that I think taken as a whole, it renders it it doesn't meet the burden. You're talking about the testimony from the Border Protection here? Correct. As well as the testimony that she the statement that she gave to police the day after the event occurred. There's certainly inconsistencies in impeachment in every case. The issue is does it rise to the level of reversible error for insufficiency of the evidence. And we do have some corroboration to the victim's testimony. Specifically the medical exam. The medical exam did say that it could have been a sexual assault. However, the nurse also said that the injury could have resulted from a minor fall or a straddle. Also, there was an imperceptible almost bruise on her hand and a shoulder injury that was not visible. Those do not necessarily corroborate her testimony that she was choked. That she was grabbed on the arm several times. So I believe that that is significant in this issue. But the trier fact ultimately makes the credibility decision, correct? Certainly. And we are really not able to do that because although we see you in counsel, we don't see the parties as they present before the court. We don't see facial expressions. We don't see eyes. We don't see body language. We only read a cold record for lack of a better description. Well, under Cunningham, which I cited in the brief, the fact finder's determination is that you've granted death rights, but it's not binding or conclusive. You know, the fact that the judge accepted the testimony does not necessarily mean it was reasonable to do so. And under that case, it also states reasonable people may act unreasonably in certain situations. Is the issue that, are you saying that it should have been prevented from being offered, which would be an abuse of discretion issue that he shouldn't have allowed the testimony? No, I'm not. I'm saying that there was just not enough cooperation. Additionally, the party's son himself testified that in August of 2013, which was the month that he was charged, Mrs. Johnson said to her sister, I know he didn't do it. I'm doing this to get back at him for cheating on me. The party's son said that the statement was made by the victim to her sister, but not to him. Correct. Was he present? He overheard it, yes. Okay, so he was present. Yes. And the fact finder also heard that. Correct. Correct. I believe that there's a lot of evidence here that just did not reach that burden of beyond a reasonable doubt. There's, for example, some of the inconsistencies at the order of protection hearing. She said that there was no struggle during the order of protection hearing. At trial she said there was a struggle. That's significant considering the fact that that's an element of this offense. She said she never saw a gun at the order of protection hearing. At the trial she said she saw the handle of a gun. At the order of protection hearing, she said that Mr. Johnson was not screaming in a motel room. At the trial, he said she was. These are certainly significant because taken as a whole, combined with additional impeachments from the state, from the statement she made to the police, it renders her testimony incredible so as not to have the state meet its burden. The trial court pointed out the fact that there was this contentious relationship for several weeks, that they were in an argument that other people witnessed in the parking lot a few days before. The motel clerk heard a woman crying outside of the motel. The victim the next day was extremely upset. Everybody testified to that. The physical exam that we talked about already. Also, the court considered the defendant's demeanor on cross-examination, how he apparently, according to the trial courts, flipped a switch and turned into this aggressive type of person. Again, those are some of the corroborative facts that the trial court looked at. Yet, we're in a position of weighing the impeachment that you're pointing out against corroboration and we have to decide that the trial court abused its discretion in letting this abuse its discretion, but it was against, no reasonable person would have found this defendant guilty. It's a difficult burden that you have when there's so many conflicting things going on. Certainly. As to the client's anger on the stand, he maintains his innocence. He said that this was completely consensual. The parties get two very different versions of what happened on April 11th. Particularly because he comes from a personal point where his sister had been murdered by her boyfriend in 1992. He had done domestic violence fundraising and volunteering. This was a particularly sensitive issue and for him to be accused of it, he was very angry. Did he explain that to the judge? I believe it was in the allocution that he was guilty. Not that I recall. Do they agree that she told him that she was done? Or is that that she wanted a divorce, she wanted out? Do they agree on that element? The agreement between them, it was a mutual understanding. My client's testimony was that when they went to the parking lot at the Motel 6, they were sitting there reminiscing about the end of their relationship, reflecting on it, it was a somber moment and they decided to get a hotel room. He also wanted a divorce? Correct, he filed for divorce. But beforehand it had been filed for? Beforehand. Before this incident that we're here to discuss? It had been... Mrs. Johnson told the police that she had filed for divorce, which was untrue. Mr. Johnson filed after that. But is there any doubt that over a period of time he's sending her roses and cards and going to see her, maybe at work, to talk about these things and the talks from his perspective were that he didn't want to get a divorce? I believe that those were some of the things that were brought up. However, he needed to communicate with her regarding certain issues such as child support and child custody. She refused to communicate with him. The record does show that she was not welcoming of these gestures, but it also shows that they typically had kind of screaming conversations. Everything was contentious. Mr. Johnson also changed his phone number several times. Additionally, she had actually gone to see him in March in the hospital, which goes against her testimony that she wanted nothing to do with him. Which, again, I think is a significant factor. What about your second issue? Add to the second issue. Mr. Johnson was convicted of criminal sexual assault, which is a non-probationable offense. Under the statute, he shall not be under her to undergo a sex offender evaluation in that situation. The other offenses were not mandatory. He was found not guilty of several, and then he was found guilty of aggravated domestic abuse, aggravated battery, something else. Two unlawful restraints. None of those would have been mandatory. In fact, the judge did not impose jail sentences. If we have this mixed bag, so to speak, of mandatory and not mandatory, why can't the judge consider this type of report, this evaluation, for the non-jailable or the offenses that were non-mandatory? Those were not sexually motivated offenses. It was not concluded by the court that they were. He was sentenced, as she saw appropriate, on those. What was the allegation of the domestic abuse, the aggravated battery or the aggravated domestic abuse? Of the other offenses. One was unlawful restraint in the car. One was unlawful restraint in the hotel room. Aggravated battery was he allegedly pulled her coat up against her neck. Aggravated battery was he allegedly choked her in a chokehold. Unlawful restraint, especially in the hotel room, could certainly be seen by a reasonable person as a sexually motivated offense. It could be. However, I believe that the judge would have listed those as sexually motivated. They would have made some sort of finding to that. But she determined that based on those, he was given 30 months probation to be served after his incarceration. Are you talking about the judge making that finding at the close of the proofs of the case? Or are you talking about the judge making that finding at sentencing? At any point. Right. Because at the close of the proofs of the case, the trial court finds him guilty. The trial court orders a pre-sentence investigation. The trial court hasn't, up to that point in time, made any factual finding regarding unlawful restraint. So, theoretically, the trial judge at sentencing could make that finding, that it was sexually motivated, and give him sex offender probation, correct? The statute here is the problem because... I know the statute. I know the statute. The plain language of the statute is what you're arguing. Especially the last line of it. Correct. But, you know, when we're looking at this, whether, let's assume for a moment that's error, to order that. You know, the issue is whether the defendant received a fair sentencing hearing, and that boils down to how did the judge treat that information? There's really two prongs to that that I see. One is, it found him to be a pedophile, which the trial court completely dismissed. Correct. And then the second was whether there was any type of obfuscation or, you know, obstinacy going on with that evaluation. So, where's the fair sentencing hearing? The judge specifically stated that she considered the sex offender evaluation. She said that he had put himself in a trick bag, and she used the sex offender evaluation to bolster what she had determined was his angry demeanor. And it should not have been considered in the first place. It was not. How did she say that at the sentencing hearing? That she used the sex offender evaluation to bolster her finding that he was an angry person, he had an angry demeanor? She did not say in those specific terms. She said that I have it here. Maybe I'll short-circuit this. The only thing I saw is in R-373 where she talks about his attempt to deceive the evaluator and he was trying to outsmart the evaluator. Is that what you're talking about? Correct. She considered it. She used it, she saw it as another way that he was just trying to be deceitful. You see, I mean, that's the way you're reading it, that's the way you're arguing it. The context of those statements is no, I don't believe Mr. Johnson is a pedophile, okay? And then she goes into explaining the next two paragraphs on R-373, at least it can be viewed, I think, or argued, as to why she didn't think he was a pedophile. She didn't think he was a pedophile because the only thing that supported that was the fact that he answered the exact same answer to every question in the sex offender evaluation. And she went on to say that that was an attempt to deceive the evaluator and he was trying to outsmart the evaluator and it ended up backfiring on him, and that was the reason why she was finding that he was not a pedophile. It's because, you know, again, not saying I'm using this to show that he's a deceptive person, he's an angry person, but I'm using this information to show why I'm finding he's not a pedophile. Certainly, but those findings, regardless of whether they were the substantive findings were used, and as we said, she said he's not a pedophile. They were considered. Additionally, it made her have to consider the fact, what are these findings? Is he? Why did it turn out like this? It certainly gave her additional fodder for her opinion, particularly where his background was so clear. This was one of, other than the facts of the case, this was the only other aggravating factor. He had a spotless criminal history. He didn't even have a high school disciplinary record. He was a pillar in the community, member of the Shriners, member of the Masons. The trial judge pointed that out. The trial judge said this is an extremely unusual situation where this person is a normal, upstanding citizen, and then the trial court goes on to say the aggravation here is really just the facts of the case themselves. The trial judge is making a finding that, at least it can be read, that the only aggravation in the case whatsoever are the facts, which has nothing to do with anything else, just the facts. And then sentences your client to six years, which is at the low end of a four to fifteen sentence. And then, on top of that, there's mandatory consecutive felonies that he's facing sentencing on, and he doesn't go to prison on those. So, I mean, really, the mandatory minimal sentence would have been another three years under class two. The four year, he should have been given four years under the candidate. So the facts aren't aggravated. The facts don't warrant the two years, the facts of the case itself. No. Not with a knife, not using a knife. You can do a criminal sexual assault without a knife, correct? Correct. You can do a criminal sexual assault without a gun? Correct. You can have a criminal sexual assault that doesn't involve domestic violence, which some people see as aggravating? Correct. So, I mean, aren't those factors aggravating in this case under the facts themselves that he, according to the victim, had a knife, threatened her with a knife, showed a gun to her, you know, it's his present wife, estranged wife at the time, but those aren't aggravating facts that could potentially warrant a bump in the sentence for four years? Not in this circumstance. He had to participate in the pre-sentence evaluation. Yes. And there were questions that he would be asked and he would have to answer. Did the judge make any reference to his answers or his cooperation with the actual pre-sentence evaluation? No. She mentioned, as she did with the sex offender evaluation, that she considered it. Okay, but she only, in your opinion, she only used the sex offender evaluation for  that he was an angry man or he was obstinate or he wasn't going to cooperate with the court? I know that she did not use it for the pedophile allegations. The other extent that she used it, it's completely unclear. She says that she reviewed it, that she evaluated it. What weight she gave it is unknown. And under those circumstances where the weight is unknown, remand is the proper remedy. By saying that she took issue with the fact that whether or not he was a pedophile, and she disregarded that, wouldn't you say then that she was dismissive of it? Of that additional information? Of that particular portion. The rest of the exam, it's not clear exactly what she considered. Well, by all accounts, there wasn't much for her to consider in terms of a sex evaluation because he answered the same way to every single question. So what could she have used it for in terms of a sex evaluation? There were four tests administered where he answered the questions the same that was for one type of test. There were other evaluations that were found that were not necessarily against him, but again, the fact that this was used and considered and was used to bolster her understanding of him and who he was. It's unfair, and moreover, the fact that the prosecution relied on it so heavily in the argument, and then the defense was forced to defend against that also resulted in an unfair hearing. All right, you'll have an opportunity to reply. Before I am done, I'd just like to ask the court to reverse the sentence in the criminal sexual assault case and remand it for resentencing as well as on a reasonable doubt reverse the convictions as a whole. Thank you. Mr. Minster. Good morning. May it please the court, counsel, my name is Tom Minster on behalf of the people of the state of Illinois and the DuPage County State's Attorney's Office. In regards to counsel's first argument about beyond reasonable doubt and the sufficiency of the evidence, what's important to recognize is not only that the victim's testimony was corroborated, which was found by the trial court, but what the trial court said about the defendant's testimony, and that's the perfect representation of why the law gives such deference to a trial court's findings, specifically when the trial court noted in its ruling that the defendant's testimony was nothing the court had ever seen before and that the record won't do it justice. And that's exactly why the trial court gets such deference, because all we have is a record that has no indication of tone, indication of demeanor. The trial court was able to see that, and in this case the trial court made note that it was able to observe the defendant's demeanor and found him completely incredible, while finding the victim credible in this case. And that's what led the court to its conclusion in finding the defendant guilty of the charges in this case. So the court doesn't have any more questions in regards to the first argument. Well, was there any issue with the defendant's testimony about his I guess we'll call it, just for purposes of this argument, quick to anger potential? Yes, and that's specifically what the court from the state's standpoint was insinuating when she was talking about it. It was nothing that the court had ever seen. Well, she didn't believe him, but there's another element to that, and she relates to that in sentencing about his obstinacy, maybe to the court, his resistance to this intervention and his anger. Does she specifically talk about that at the end of the testimony? Yes, and she does. I believe the court did mention on multiple occasions that the defendant's demeanor while he testified in his quick to anger was entirely consistent with actually what the victim and the witnesses had observed in the testimony that they elicited during trial, and that further corroborated, again, the state's case in chief and further was another reason why the court did find the defendant guilty of those charges. Well, the state is important in proving the case through their case. I mean, the fact that the trial court might find a defendant completely incredible, the trial court has to still place some weight on the state's case, and I know the trial court here did find the victim credible, but you would admit there was some substantial impeachment, correct? Exactly, and the trial court mentioned that, too, and it's ruling the trial court specifically said, hey, there was impeachment on both sides. The trial judge is a sheep. Yes, Judge. Judge Kreisler. The trial court mentioned that both sides had their witnesses impeached on multiple occasions, but the court in balancing the factors of the corroborated testimony of the victim through other witnesses who weren't impeached and independent witnesses and also taking into account the defendant's own testimony and how the defendant's testimony really just corroborated the victim's testimony and what other witnesses had observed, that's what the court couched its findings in. How did she deal with the testimony of the son that she had, or he had heard, pardon me, mother say to her sister that this really didn't happen, I was just trying to get back at him? I believe the court, after hearing the testimony of the son and taking that into account, couched it as he's caught in the middle here. I believe the son at the time was living with the father, and so that was how the court didn't necessarily on the record find him incredible, but used that as sort of inherent bias in his testimony compared to the other corroborated testimony that the state presented. So if the court doesn't have any questions at this point, I'd like to move on to the second point, the sex offender evaluation. That's fine. Thank you. In regards to that, this is the plain error rule, so the defense does have the burden in establishing that there is error and the first prong of this in this case we can look at is the prejudicial portion of it. The defendant was sentenced to six years in the Department of Corrections to count one and a concurrent term or I'm sorry, a consecutive term of probation and county jail on counts seven through ten. Obviously the defendant was facing up to fifteen years in prison on count one and was facing also multiple years of Department of Corrections time on counts seven through ten. The defendant received the lower end of a sentence on count one. Six years  Then he received probation on the other counts which he could have received on Department of Corrections time. In regards to the sentences in and of itself, those again are on the lower end here and are well within mandatory minimums and maximums. What is the maximum total that he could have received if the consecutive sentences were to the Department of Corrections? He could have received a total of thirty years. It could have been fifteen and fifteen. Count one is a class one felony for fifteen years and it was not probationable. Count seven was also a class one felony which the defendant was subject to four to fifteen years. Which one is that? That is the aggravated domestic battery. I thought that was a two. Is that a one? I'm sorry. The aggravated battery in a public place was a class two that's count eight. Sorry if I misstated that. In regards to that sentence Aggravated battery in a public place is a class three. Yes sir. And domestic battery is a class two so it would have been fifteen plus seven for a maximum. I apologize Your Honor. That is correct. It would have been fifteen plus seven Your Honor. So that would be twenty-two years in the Department of Corrections he was facing. Mr. Hensar, when a court knows that he or she is looking at a mandatory sentence, a jail sentence as opposed to a probational sentence and there are other charges that may be considered for probation, how should a court use the statutory authority? In regards to specifically the sex offender evaluation? Yes. Well Your Honor, again I think actually counsel pointed out in their brief that the sex offender evaluations are really for the court's benefit to determine whether or not somebody should be released and given granted term probation. Whether it's safe for the community, whether it's beneficial for the defendant. In regards to this evaluation it should be looked at as more of a tool for the court to be able to give a right and just sentence. But we knew when he was convicted of the criminal sexual abuse that he was going to have to go to prison. That's correct. For some period of time. So that's in this mix. Should the trial court then say or make some representation of the purpose of ordering that evaluation when we have possibly probational offenses and we have the record that Mr. Johnson had which was no record. There's a presumption of probation except for criminal sexual abuse. Yes. So should the court make some clarification or should the court read this precisely? There shall be no sex evaluation sex offender evaluation in cases where there is a prison term, mandatory prison term. Wait a minute. I guess the larger question to your point is what is the actual intent then of this statute in regards to what does shall not mean. And quite clearly the word shall has had a lot of litigation in regards to whether or not it does mean in fact prohibited or mandatory for all the time. Yes, but only the Supreme Court can say shall means may and I don't believe they've done that in this case. That's very true, Your Honor, but as this court actually has ruled before that the use of the word shall while generally it does mean mandatory, the fact that there's no remedy within the statute for a violation of this also indicates that it's unclear and can be ambiguous. So in regards to that, we have to look at what the legislature intended when they did use the word shall. And in this case, we do have a legislative history, although it is limited. The legislative history here from the senator who proposed it, Senator Rissinger, he specifically said this statute's amendment is being made to eliminate the need for a pre-sentencing sex offender evaluation where a convicted sex offender is subject to a mandatory prison sentence. Eliminating the need, and it is a small statement, but eliminating the need does not mean a court is prohibited from considering it. It's a resource type argument. The senator is making it clear that a lot of resources go into these sex offender evaluations. You have to have a therapist do it, a licensed therapist, many times a doctor. And for cases that it's not necessary, where a court's not going to consider it, the court should not have to order it. In this case, the court felt like it was going to help aid its determination of whether or not the defendant should get probation on the subject counts. Well then, wouldn't it have made sense? We talked about this in a previous case. Best practices is the new way of the law. Best practices to do this, best practices to do this. Judges are instructed to look at best practices. Wouldn't then it have been a better practice, especially in this case, to say these other cases could be considered for probation and I will look at this evaluation that I am ordering understating the statute prohibits it for the criminal sexual abuse, but I'm ordering it with reference to the other charges. Would that have been clearer as a bell? That would have been fantastic. We probably wouldn't be here today. But in regards to that anyways, it's not present in this case, but clearly he was eligible for probation on his other counts, and he did get probation. And what's also important to note is that although the sex offender evaluation was completed, he didn't even get sex offender probation. The court sentenced him to a straight probation sentence. So that means not only did the court is the emphasis the court placed on the sex offender evaluation almost frankly impossible to see. The court put on the record she didn't find him as being a pedophile, but she didn't even give him sex offender probation, which indicates that Maybe she didn't because she didn't believe that any of the offenses that she was sentencing him to probation were sexually motivated. That may also be true, but the problem is If that's true, then a sex offender evaluation for all those other offenses would be of no aid to the court whatsoever. I wouldn't go that far because from the standpoint of this case, it's impossible to separate the other counts as to count one in regards to not being sexually motivated in nature. The fact that count 10 specifically the unlawful restraint is based upon the victim being held an unlawful restraint in the hotel room in which she was sexually assaulted, you cannot separate that from the sexual nature of the unlawful charge, count one. And that's why, although the court doesn't make an explicit statement saying that I find these charges as sexually motivated in nature, it's quite clear that these crimes, count 7 through 10, occurred as the defendant was getting the sexually assaulted. That's what happened and that was the motivation in committing those crimes, which would clearly fall under the sexually motivated crime statute that would allow the court to order a sex offender evaluation. So, just from the facts in this case from the state's position, the court could have ordered it because they are sexually motivated, regardless of the lack of an explicit statement by the court. But, in regards to that too, again, the court didn't put any as far as the record is concerned, there is nothing in the record that shows that the court put any undue emphasis on this sex offender evaluation. In fact, all the court apparently did in this case was discredit saying, I don't find you a sex offender, I don't think you are a pedophile, which is why I'm giving you straight probation instead of sex offender probation. And the only statements the court actually made in regards to sex were made along with the pre-sentence report. The court kind of couched them both in together. So, what prompted the additional or the bump up of two years then in the mandatory jail sentence? Well, Your Honor, I would say the facts and circumstances of the case did. The fact that the underlying facts of the case were extraordinarily aggravating. What the court saw in the defendant testifying, that also was an aggravating factor along with, again, what the court said was, what it found was deceitfulness in the pre-sentence report. Defendant's continued demeanor, deceitfulness, and not having any remorse as to what he did. All proper things that the court could consider in sentencing the defendant. And again, in a plain error argument, it's more than just showing that the court may have considered. You have to show the court actually did consider. You have to show the court actually did improperly rely, and that improper reliance actually increased the sentence. And that's just not present. Well, we have, I'm sure you're aware, I can't give you names, but we have reversed when improper factors have been considered because we cannot see the level to which the consideration impacted the sentence. We know he got probation, but that could, and it wasn't sex offender probation. So, we essentially know it wasn't considered there. He wasn't sex offender probation. We know he got two more years on a 4-15 sentence, and assuming with his record he could have gotten the 4-year period. So, if the judge doesn't tell us and doesn't say, look, I ordered this, I don't need it, then do we need to send it back so that the judge can tell us what, if any, impact this had? No, Your Honor. And I know this Court has overturned cases for the reason you stated, but the Court, there also is law that indicates that judges are only, are presumed to only consider the proper evidence. And in this case, when you But the judge ordered, in a mandatory incarceration case, something that shouldn't have been ordered. So, how can we make that presumption in this case? Well, true, and yes, for argument's sake, that it wasn't proper, as you said, and again, looking at the judge's own words, and how the judge considered the sex offender evaluation, and frankly discrediting the sex offender evaluation by saying, look, I've reviewed it, I don't agree with its conclusions that you're a pedophile, but I can look at what you did in the pre-sentence report of the sex offender evaluation, and how you answered those questions, and I think it's the same deceitfulness that I saw when you testified at trial, along with the facts at trial, and along with your testimony at trial. That's why I'm giving you this sentence. But did Judge Creswell ever actually mention the pre-sentence report when she made this determination? Yes, and that's where Judge Creswell mentioned that the pre-sentence report and the sex offender evaluation, I believe it is how she termed it, when she had talked about the defendant's demeanor and deceitfulness in being used in aggravation. But if there are no more questions, I hear the bell going. The State would ask that based upon the evidence in this case and the arguments presented in this case brief, we would ask that you affirm the defendant's convictions in this case. Thank you very much. Thank you. Ms. Vick? Ms. Vick, just a quick question before you begin. We have repeatedly, I've heard the statement that Judge Creswell actually ordered the sex offender evaluation. Do we know procedurally how that took place? Did she just say, pre-sentence investigation order? Did she just check a box? Did she specifically mention it? Do you know? It was specifically mentioned in a transcript, and there was also a specific order made. Okay. So she actually, Judge Creswell actually voiced those words, you're saying? Yes. Okay. Thank you. Yes. A few responses. As far as the mandatory nature of this, that's undisputable. Shall not is a clear indication of mandatory language. In People v. Youngby, which I cited, it states that the not is indicative factor of mandatory. And as well as, again, although the legislative history is somewhat vague, it went from the statute went from being not mentioning it at all to mentioning it you know, probation, just probation, and then the most recent incarnation is the shall not shall not be ordered as well as the fact that it also added the language that states where the offender sentenced in felony sex offense cases is being considered for probation only. It added that, which also further supports the conclusion that this is mandatory. Additionally, the Sex Offender Management Board Act works in conjunction with this, where it states that only let me just look yeah, it states that where sex offenders are being considered for parole they can get evaluation, but those for probation just a moment let me rephrase my argument Youngby says that this is mandatory. The evaluation is going to be required once he leaves incarceration. He's going to be required to register as a sex offender. The judge should not have ordered this because he was also charged with these other crimes. They were not sexually motivated. There was no findings on that on the record. And this specifically relates to the criminal sexual assault for which he was incarcerated. Do there have to be findings for that on the record? Or can we just rely on the facts? Assuming those facts are true, can we just rely on those facts? Your Honor, I do not have an answer for that. What if the trial judge had made a finding that the aggravated criminal or the aggravated domestic battery or the aggravated battery or more likely from just the facts the unlawful restraint was a sexually motivated crime. Your position is that this is mandatory since there was criminal sexual abuse, he was going to have to go to prison. If she made those findings, could she have ordered the sex offender evaluation and derogation of the shall not in the statutory authority? No, it should not have been ordered under any circumstances because he's going to be evaluated once he's actually let out into the community. During that time things could have changed. He's going to have to undergo treatment according to the act. The specificity that this statute has clearly shows that where there is no chance of probation for a charge he's going to prison no matter what. This should not have been ordered. Additionally, as far as the legislative intent, again, I just wanted to focus that statutory construction says that we only look to outside aides when the statute is ambiguous. Here it is not. It was specifically changed to say shall not. But we have to also read that in terms of how cases come before court. We have many cases where there is probation being considered on four offenses or he's eligible or she's eligible for probation on four offenses, but the fifth offense is a mandatory criminal, is a mandatory jail sentence. That situation rather than the statutory authority might create the ambiguity. So in that case of the legislative history would be helpful in that regard. Certainly. In that case, there's a couple of reasons that could be, I suppose, inferred. I argued some in my brief. However, the state could have, or the legislator could have found that this is potentially duplicative because of what's going to be happening at the end of this process of his incarceration. It could become irrelevant at that time. The dissent in People v. Hillier which we referenced states also that suggests that this trial court should not have ordered the evaluation there because a harsher sentence on defendant would have been imposed without requiring the state to prove those results beyond a reasonable doubt, which is another potential interpretation of why the state legislature did this. May I just make one more point? In regards to the anger on the defendant, he was an upstanding citizen for 49 years who had never been accused of any abuse. He was angry. He was hurting, and for an hour on a stand, that's what the judge saw, unfortunately. But that does not necessarily erase the 49 years of his life where he spent helping others in his community. And that's the context that this anger that she saw should be considered. She mentioned that in relation to corroboration, though not necessarily the sentencing, correct? You're talking about the corroboration? You're talking about the sentencing? I am talking about the sentencing where she mentioned, you know,  on the stand. Are there any other questions? No. Thank you. Thank you, Counsel, for your argument this morning. We will issue a decision in due course. We will stand adjourned now for the day, and we thank the participants for being here, and we ask that you all leave in an orderly and appropriate fashion. Thank you.